UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CANDICE WARD,**

        **Plaintiff,**

v.                                                                    Case No: 6:24-cv-1323-PGB-RMN

**PROGRESSIVE SELECT INSURANCE COMPANY,**

        **Defendant.**

_____/

# ORDER

This cause comes before the Court upon Defendant Progressive Select Insurance Company's ("**Defendant**") Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 15 (the "**Motion**")) and Plaintiff Candice Ward's ("**Plaintiff**") response in opposition (Doc. 17 (the "**Response**")). Upon consideration, the Motion is due to be denied.

## I.    BACKGROUND[1]

This lawsuit arises from Defendant's alleged bad faith in the handling of a bodily injury claim against its insured, Harry Morris (the "**Insured**"). (*See generally* Doc. 1-1 (the "**Complaint**")).

---

[1] This account of the facts comes from Plaintiff's Complaint, which the Court accepts as true for the purposes of this Motion. (Doc. 1-1); *see Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiff was involved in an automobile accident with the Insured. (*Id.* at p. 2). At the time of the accident, the Insured had an automobile insurance policy (the "**Policy**") with Defendant that provided $250,000 of bodily injury liability coverage per person. (*Id.*). According to Plaintiff, the value of her injuries "clearly exceeded" the coverage limits of the Insured's Policy. (*Id.*).

Plaintiff advised Defendant of the extent of her injuries and offered to settle the claim. (*Id.* at p. 3). Defendant let Plaintiff's settlement offer expire. (*Id.*). Thereafter, Plaintiff sued the Insured in state court for damages arising from the accident. (*Id.*). While the state court lawsuit was pending, Plaintiff twice offered to settle the claim within the Insured's Policy limits, but Defendant refused. (*Id.*).

Ultimately, in the state court lawsuit, a jury found the Insured liable for an amount exceeding the Policy limits on October 18, 2022. (*Id.*). On February 17, 2023, a Final Judgment was entered against the Insured in the amount of $490,000. (*Id.*; Doc. 1-10). At some point thereafter, Defendant partially satisfied the Final Judgment by tendering the $250,000 Policy limit. (*See* Doc. 1-1, p. 4; Doc. 1-10). To reflect Defendant's partial satisfaction, as well as Plaintiff's entitlement to attorney's fees and costs, the state court amended the Final Judgment on November 20, 2023. (*Id.*). An Amended Final Judgment—in the amount of $515,000 (the "**excess judgment**")—was entered against the Insured. (*Id.*).

On March 8, 2024, Plaintiff, as an assignee of the Insured, filed a Civil Remedy Notice ("**CRN**"). (Doc. 1-1, pp. 4, 10–12). The CRN alleged that Defendant

violated Florida Statute § 624.155 in its bad faith handling of Plaintiff's claim against the Insured. (*Id.*). The CRN provided Defendant an opportunity to cure the alleged violations by paying the excess judgment, plus post-judgment interest. (*Id.*). Defendant denied the allegations of bad faith and refused to pay the excess judgment. (*Id.* at p. 4).

Consequently, on June 20, 2024, Plaintiff initiated this lawsuit against Defendant, asserting a common law bad faith cause of action (Count I) and a statutory bad faith cause of action under Florida Statute § 624.155 (Count II). (*See generally id.*). Subsequently, Defendant moved to dismiss Count II of Plaintiff's Complaint (Doc. 15), and Plaintiff responded in opposition (Doc. 17). Accordingly, the matter is now ripe for review.

## II.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the

3

complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

### III. DISCUSSION

#### A. First-Party Bad Faith Actions Versus Third-Party Bad Faith Actions

As an initial matter, the Court clarifies the distinction between a first-party bad faith action and a third-party bad faith action. The Court does so because despite acknowledging that the instant action is a third-party bad faith action, Defendant primarily relies on three cases addressing first-party bad faith actions.[2]

---

[2] Moreover, the Court notes that the first-party bad faith actions that Defendant cites to significantly differ from Plaintiff's third-party bad faith action. (*See* Doc. 15, p. 5). In *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278, 1281–82 (Fla. 2000), the Supreme Court of Florida affirmed Judge Glazebrook's decision rejecting the plaintiff's

4

(*See* Doc. 15, p. 5). Thus, as Plaintiff points out, Defendant "either misunderstands or misrepresents the significant distinction between first-[party] and third-party" bad faith actions. (Doc. 17, p. 3).

While a first-party bad faith action exists when the insurer fails to process the insured's claim in good faith, a third-party bad faith action exists when the insurer fails to handle a third-party's claim against the insured in good faith. *See Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 457 (Fla. 2006). Significantly, a third-party bad faith action can insulate the insured from an excess judgment caused by the insurer's bad faith handling of the claim. *See Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179, 181 (Fla. 1994); *see also Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125 (Fla. 2005) ("Third-party bad faith actions arose in response to . . . a practice in the insurance industry of rejecting without sufficient investigation or consideration claims presented by third parties against an insured, thereby exposing the insured individual to judgments exceeding the coverage limits of the policy while the insurer remained protected by a policy limit."). In contrast, there is no such risk of an excess judgment in a first-party bad faith

---

contention that the defendant had to pay "all compensatory damages that flow from any delay in settling the claim" to cure a first-party bad faith claim. *See Talat*, 753 So. 2d at 1281–82 (finding that "[the defendant] has timely paid 'the damages' and has corrected 'the circumstances giving rise to the violation' within the meaning of [§ 624.155]." (quoting *Talat Enter., Inc. v. Aetna Cas. & Sur. Co.*, 952 F. Supp. 773, 778 (M.D. Fla. 1996))). Further, in *Baham v. Property & Casualty Insurance Co. of Hartford*, No. 8:14-cv-2772-T-36MAP, 2015 WL 1471275, at *4 (M.D. Fla. Mar. 31, 2015), the court concluded that the defendant in the first-party bad faith action cured any violation under § 624.155 by tendering the policy limits. *See also Do v. Geico Gen. Ins. Co.*, No. 1:17-cv-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019) (citing *Talat*, 753 So. 2d at 1282–83) (finding the plaintiff's CRNs in a first-party bad faith action "invalid as a matter of law insofar as they were used to compel payment of extra-contractual damages").

action. *Macola v. Gov't Emps. Ins. Co.*, 410 F.3d 1359, 1363 (11th Cir. 2005). Therefore, "[i]f an insurer could preclude a statutory bad faith claim by paying the policy limits at any time regardless of its conduct during settlement, then the statute would be ineffectual in third-party cases." *Northfield Ins. Co. v. Rockhill Ins. Co.*, No. 3:19-cv-625-J-32MCR, 2019 WL 6323946, at *3 (M.D. Fla. Nov. 26, 2019).³

With this background in mind, the Court now addresses whether Plaintiff states a plausible claim for statutory bad faith under § 624.155.

**B.    Count II: Florida Statute § 624.155 – Statutory Bad Faith**

Defendant moves to dismiss Count II of Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See generally* Doc. 15). First, Defendant contends that the CRN is invalid because it "demanded extra-contractual payments to cure the alleged violations." (*Id.* at pp. 3–5). Second, Defendant contends that it cured the alleged violations when it tendered the Policy limits. (*Id.* at pp. 13–14). The Court disagrees.

   *1.    Florida Statute § 624.155(1)(b)(1)*

Section 624.155 authorizes "[a]ny person [to] bring a civil action against an insurer when such person is damaged" because the insurer did "[n]ot attempt[ ] in good faith to settle claims when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due

---

³ "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

regard for her or his interests." FLA. STAT. § 624.155(1)(b)(1). Before bringing a statutory bad faith action under § 624.155, the claimant must provide the insurer sixty days written notice of the violation in the form of a valid CRN. § 624.155(3). Within those sixty days, an insurer can cure the alleged violation and avoid a civil action if "the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(c).

### 2. *Plaintiff's CRN*

In the Motion, Defendant argues that Plaintiff's CRN is invalid because it "demanded a cure that is in excess of the contractual amount due under the Policy." (*See* Doc. 15, pp. 6–13). Thus, because a valid CRN is a prerequisite to filing a statutory bad faith claim, Defendant asserts that Plaintiff's invalid CRN cannot support Count II. (*See id*.). To bolster this assertion, Defendant relies on cases addressing first-party bad faith actions. (*See id*.; *see also supra* note 2). In the Response, Plaintiff contends that Defendant's reliance on such cases is misguided because of the distinction between first-party bad faith actions and third-party bad faith actions. (Doc. 17, pp. 3–7). Specifically, Plaintiff asserts that because the focus of a third-party bad faith action is "the failure to settle a claim against the insured," an insurer must sometimes pay an excess of the policy limits to cure an alleged violation. (*Id.* at pp. 4–5).

In *Northfield Insurance Co. v. Rockhill Insurance Co.*, No. 3:19-cv-625-J-32MCR, 2019 WL 6323946, at *3 (M.D. Fla. Nov. 26, 2019), the court considered a similar third-party bad faith action where an excess insurer (the plaintiff) filed

7

common law and statutory bad faith claims against the primary insurer (the defendant). 2019 WL 6323946, at *1. The plaintiff's CRN sought the entire amount it expended to settle the underlying lawsuit. *Id.* The defendant, in its motion to dismiss, argued that the plaintiff's CRN was invalid because the defendant already tendered the policy limits in partial payment of the settlement. *Id.* at *2. The court in *Northfield* emphasized the irrationality of the defendant's interpretation of § 624.155:

> Under [the defendant's] interpretation, an insurer could act in bad faith in settling a claim to try for a lower payout, then, if it fails, pay the policy limits and leave the insured exposed to an excess judgment without any statutory recourse against the insurer. Such a result is not allowed under the common law, and the statute codifies the common law with respect to third-party bad faith.

*Id.* at *3 (internal quotation marks and citation omitted). The court thus concluded that "a CRN must be allowed to seek extra-contractual damages in third-party cases." *Id.*; *see also Eads v. Allstate Indem. Co.*, No. 14–CIV–61791, 2014 WL 6453178, at *6 (S.D. Fla. Nov. 17, 2014) ("In the case of a third-party allegation of bad faith, an insurer must pay the claim in order to cure, 'sometimes in excess of policy limits.'" (quoting *Talat*, 753 So. 2d at 1282)).

Here, like in *Northfield*, the CRN demanded extra-contractual damages to cure the alleged violations. (Doc. 1-1, pp. 10–12). Specifically, Plaintiff's CRN sought the excess judgment, plus post-judgment interest, that the Insured was exposed to from the state court's Amended Final Judgment. (*Id.* at pp. 3–4). Thus, to prevent the Insured from being "exposed to an excess judgment without any

8

statutory recourse against" Defendant, the "CRN must be allowed to seek extra-contractual damages." *Northfield*, 2019 WL 6323946, at *3. Accordingly, at this stage in the proceedings, the Court finds Plaintiff's CRN to be valid in seeking extra-contractual damages.

### 3. *Defendant's Alleged Cure*

Defendant also moves to dismiss Count II because it cured the alleged violations in the CRN when it "tendered the contractual amount due under the Policy." (*See* Doc. 15, pp. 13–15). In response, Plaintiff posits that considering this is a third-party action, Defendant was required to "'pay the claim,' even if that claim is 'in excess of policy limits.'" (Doc. 17, pp. 7–8 (quoting *Talat*, 753 So. 2d at 1282)). Accordingly, Plaintiff's CRN offered Defendant the opportunity to cure the alleged violations by paying the excess judgment, plus post-judgment interest. (Doc. 1-1, pp. 10–12). Thus, because Defendant only paid the Policy limits, Plaintiff contends that Defendant failed to cure the alleged violations in the CRN. (Doc. 17, pp. 7–8).

Here, to cure the alleged violations in the CRN, Defendant had to pay the claim—namely, the excess judgment of $515,000. (Doc. 1-1, pp. 11–12). Defendant, however, refused to pay the excess judgment. (*Id.*). As such, Defendant failed to cure the damages or circumstances giving rise to the alleged violations in Plaintiff's CRN.[4] *See* § 624.155(3)(c); *see also Hollar v. Int'l Bankers Ins. Co.*, 572 So. 2d 937,

---

[4] To the extent Defendant argues that its tender of the policy limits cured the alleged violations in the CRN, this argument fails. (*See* Doc. 15, pp. 13–15). Simply put, an insurer's tender of the policy limits *after* an excess judgment has been issued against the insured does not cure

9

939 (Fla. 3d DCA 1990) (finding that when analyzing a third-party bad faith claim, the term "damages" in § 624.155(3)(c) "contemplate[s] the same elements of damages that are viable and extant under the decisional law of the supreme court. Consequently, under the statutory formulation established by [§] 624.155, a tender of policy limits will not ordinarily satisfy the insured's full claim of damages for a bad-faith claim.").

Ultimately, in viewing the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff's CRN is valid, and Defendant failed to cure the violations alleged therein. Consequently, Plaintiff has sufficiently pled a plausible claim for statutory bad faith under § 642.155(1)(b)(1).

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 15) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 8, 2024.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

---

an alleged bad faith claim. *Hollar*, 572 So. 2d at 938. Moreover, as discussed in *Macola*, "the essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." 953 So. 2d at 458; *see also Northfield*, 2019 WL 6323946, at *3; *supra* discussion Section III.A. Consequently, Defendant's tender of the policy limits did not cure the alleged violations here because the Insured is still exposed to an excess judgment. *See id.*

Copies furnished to:

Counsel of Record
Unrepresented Parties